## AMERICAN TRI-ERGON CORPORATION v. PARAMOUNT PUBLIX CORPORATION.

### No. 439.

Circuit Court of Appeals, Second Circuit.

June 4, 1934.

SWAN, Circuit Judge, dissenting.

Ward, Crosby & Neal, of New York City (Theodore S. Kenyon, S. Mortimer Ward, Jr., and Page S. Haselton, all of New York City, of counsel), for appellant.

Charles Neave, Henry R. Ashton, William J. Barnes, F. T. Woodward, and E. J. Driscoll, all of New York City, for appellee.

Before MANTON, SWAN, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

This suit is for infringement of patent No. 1,825,598, a process for producing combined sound and picture films. It is called "sound on film." The application for the patent was filed March 29, 1922, and granted September 29, 1931, after a long interference proceeding with De Forest patent, No. 1,489,314, which was finally decided by the Court of Customs and Patent Appeals in appellant's favor. De Forest v. Vogt, Massolle & Engl, 49 F.(2d) 1075. Prompt prosecution for this infringement followed.

Appellee is a producer of talking motion pictures, and practices this process of pro

ducing sound on film motion pictures as taught by the patent in suit. The Western Electric Company and its wholly owned subsidiary, Electric Research Products, Inc., licensed its licensees, including the appellee, to use the process as the "Western Electric Sound System."

A German application for the same process was filed April 14, 1921.

The problem sought to be solved by the patent was bringing together on one positive film the picture record, which requires one type of development, and a sound record, which requires a different type of development. Its accomplishment marked an important advance in the art. Makers of talking motion pictures, including the Western Electric Company and its associates, during the period following the application for this patent tried, but until the inventor exhibited this process, accomplished little with the development of sound on film. While all apparatus necessary to practice the present invention was at hand and owned by the Western Electric Company and its affiliates, no one solved the film problem presented by the requirement of different treatment for sound and picture records. The difference in treatment was necessary to avoid distortions of one or the other or both in reproduction. The engineers of the Western Electric Company, in this period, struggling for the solution of the problem of sound on film development, turned to sound on disc. The first successful talking motion picture in this country was produced by sound on disc. The process of the patent in suit was brought to this country from Germany. Western Electric Company's engineers examined and tested it. They thereupon used it, and it superseded sound on disc. Its adoption has become universal, and speaks for the merit of the inventive thought therein involved. No sound on film was made, as this record discloses, until the appellant's process appeared. Prior patents proposed using sound on film in connection with motion pictures. One was the single film system which involved recording sound and pictures simultaneously on the same negative film, developing that film as a unit, and then printing the sound and picture records from the single negative film onto a single positive film. This involved no separate development of the sound and picture sequences on a negative film, and was unacceptable for talking pictures of good quality. Pictures require one type of development, while sound requires another. No single developing treatment is appropriate to both. Simultaneous development in a single

developer produces poor pictures or poor sound or both. The resulting inferior product has relegated the system to uses where sound is not of importance. The other system, the double film system, records sound and pictures simultaneously on separate films. Here the picture negative is developed and printed on one positive film and the sound negative is separately developed and separately printed on another positive film. This system in practice requires two separate projectors, one for the picture positive and the other for the sound positive. This necessitates the use and synchronization of a double set of projectors, which makes it impractical to commercialize the double film system. Prior patents suggested employing a double film system and endeavored to bind the two separate films on a single projector. But this was cumbersome and impracticable. The double film system did not permit the use of a single or unitary positive print and failed to solve the problem.

By the invention in suit, a product of a single positive film bearing the sound and picture records side by side is produced. The new process permits both the sound record and the picture record on the positive film to be as perfect as the arts of photography and telephony can make them, and neither is compromised in quality by reason of the presence of the other, as was the case in single film systems. The result is accomplished by recording the sound and pictures on separate films; then separately developing the sound and picture films in separate developer solutions under development conditions appropriate to the requirements of each. A single positive print is made from these two separately developed negatives, by printing the sound and picture sequences side by side on the same face of the positive film. While it might be said that superficially the positives so produced are similar to the positives produced by the single film system, still the function and effect is different, and in the practical art that difference has been demonstrated. Combining steps of the double film system and steps of the single film system, the inventors have made a combination, and a process for achieving a new result which has been effective and enduring and has become the standard practice in the industry.

The practical importance and achievement of the invention lies in its product—a one piece positive film having side by side in fixed synchronism on one face picture sequences and sound sequences, each having been recorded simultaneously on separate

negatives and developed separately according to its own requirements.

The claims sued upon are 5, 6, 7, 8, 9, and 11. Claims 6 and 7 are to be read with disclaimer filed. Claim 5 is typical, and reads:

"5. A process for producing a combined sound and picture positive film, for talking moving pictures, comprising, photographing a sequence of pictures on one length of film, and simultaneously photographing on another length of film a corresponding sequence of sounds accompanying the action, separately developing the two negatives in a manner appropriate for each, and printing the sound and picture negatives respectively upon different longitudinally extending portions of the same sensitized film, to form the sound sequence at one side of and along the picture sequence."

The commercial use of the patented process is fullsome testimony of its inventive worth. The result of testing it by the inquiry, as it should be, of what has been the commercial success of the invention, rather than the appellant's commercial success, adds greatly to its validity.

In addition to the German patent for the same process, a British application for the same process was filed April 11, 1922. It was identical with the United States and German application. The British application resulted in a patent, as did the German. The Western Electric Company's scientist, Dr. Wente, applied for a patent disclosing and claiming the invention of the patent in suit. The application stated that for correct sound reproduction "it is important that the development of the positive and negative be so carried out that the transmission of the positive is at every point proportional to the exposure of the negative. This is in general not the best condition for the pictures as under these circumstances they will usually be too harsh. In the system here proposed the picture negative and positive can be developed to give the most pleasing results for pictures, and yet the negative of the sound record can be so developed that when it is printed on the picture positive film the required contrast is obtained in the positive sound record."

■ His claim No. 31 was rejected on the patent of these inventors (British patent No. 178,442) corresponding to the patent in suit and was canceled. And, after that experience, it is now argued, by the Western Electric Company, which is defending this suit, that there is no validity. That company is hardly in a position to question validity

of the patent. Du Bois v. Kirk, 158 U. S. 58, 15 S. Ct. 729, 39 L. Ed. 895; General Knit Fabric Co. v. Steber Machine Co., 194 F. 99 (C. C. A. 2); Sugar Apparatus v. Yaryan (C. C.) 43 F. 140, 144.

The patents of the prior art to which reference is made are fairly stated to be but paper patents, and they do not anticipate. Composite printing of photographs is illustrated in the Bendman patent, No. 125,522, and Jenkins patent, No. 606,993. An apparatus for printing motion picture films with pictures arranged alternately in two adjacent series is shown in Dyer, No. 970,614. The Haines British patent of 1906, No. 18,-057, is an example of single film system. It is clear, however, from the description, that both the picture series and the sound track were to be recorded on the same negative film. The Rossi British patent of 1909, No. 21,467, had the idea of saving expense in positive prints by printing the picture series from one picture negative on one half of the positive print and another picture series of another picture negative on the other half of the positive print alongside the first series. The inventor made no suggestion of the combination of the two systems, nor does he disclose any process whereby the single positive film may be produced with sound and picture sequences after separate development of each appropriate to their respective requirements. Craig, No. 1,260,337, Bullis, No. 1,335,651, and Greensfelder, No. 1,254,684, were before the Patent Office and there held not to be anticipations. Craig did not show or describe anywhere a sound and picture record on a single film where the sound and picture records did not overlie each other. In the process he was attempting to operate, he wanted to print on opposite sides. The experts agree that this is wholly inoperative. His patent was owned by a well-known corporation, the Eastman Kodak Company, with resources for investigation and practical uses, but apparently it was found of little value. Greensfelder proposed carrying out his purpose by providing a space for different sound marks adjacent to each film of the picture sequence. The location of the sound mark in the space controlled the noise to be produced. Each location was to be connected by a separate selenium cell and train of mechanism, with the noise machine corresponding to that location. Thus, if a sound mark were recorded on the extreme left of the space, it might effect the beat of a drum; if it were in a different location, it might blow a whistle. The invention in suit has a photographic picture of sound waves on the sound

track. Greensfelder had only an arbitrary arrangement of sound marks each identical with the other and differing only in its location in the space reserved for the sound marks. Greensfelder takes his picture negative, develops and prints it first before trying to make sound marks at all. The latter are to be on a separate film after the picture positive has been completed and reproduced as a silent movie. In no event does the development of Greensfelder's sound mark negative present any problem like that in the independent development of the sound and picture negatives. Greensfelder does not provide for separate development of picture and sound negatives. He has no sound negatives, and as a practical matter the patent is addressed to a method to escape from problems of photographic recording of the natural sounds accompanying the action. It does not deal with the "talkies" problem. The Walker patent, No. 1,186,717, was limited to an old single film system; the sound and pictures were to be taken simultaneously on a single negative developed together and printed together. There is no disclosure of the separate development of the sound and picture negatives in the manner appropriate for each, and their subsequent printing on the same positive film. All the disadvantages that are inherent in the single film system, with its identical development of both the sound and picture sequences, are present in Walker's disclosure, and he makes no suggestion which would aid in avoiding them. Other patents of the prior art are far afield from any anticipation of the patent in suit.

■ A defense of abandonment is interposed under Rev. St. § 4920 (35 USCA § 69). It must be affirmatively pleaded in the answer, and this was not done. The claim of abandonment imposes a heavy burden upon one asserting it.

■ On April 14, 1922, the Examiner rejected the claims citing Bullis patent, No. 1,335,651. On November 25, 1922, the applicants canceled their original claims from the United States application and inserted a single claim addressed to the divisible negative film feature which was the subject-matter of original claim 3. On December 7, 1922, the corresponding British patent issued with but a single claim identical with the divisible film claim then standing in the United States application. On September 29, 1924, before any use of the invention in this country, claims corresponding in scope to claims 5, 6, 7, and 11 were asserted in the United States application. After March 31, 1925, claims corresponding in scope to claims 8 and 9 in suit were asserted in the application. There were no intervening rights of any sort established by the appellee or by the public in the interval between November 25, 1922, and March 31, 1925; nor was there any unreasonable delay on the part of the applicants in reasserting their invention in the broad scope justified by the original disclosure. Throughout the entire period, the applicants were asserting the invention in its broad scope in their German application and patent. That application was never restricted to the divided film system, but was maintained in language broad enough to cover either the separate film system of the claims in suit or the divided film system illustrated in the United States patent. If the applicants to any degree acquiesced in the limitations in the British patent, the evidence is ample of their insistence on the invention in its broad scope in the German application. It is a common practice to vary the scope of the claims during the course of a patent application. To temporarily cancel the broad claims and later reassert them is permissible. In the absence of intervening rights, such claims are entirely proper. There is no requirement that the applicant shall in all cases from the date of application to the date of issue assert claims as broad in scope as those ultimately allowed. Wirebounds Patents Co. et al. v. Saranac Automatic Machine Corp., 37 F.(2d) 830 (C. C. A. 6); Auto Pneumatic Action Co. v. Kindler & Collins, 247 F. 323 (C. C. A. 2). This defense may not be sustained.

The interference between the application in suit and De Forest patent, No. 1,469,314, was won by the patentees in the tribunals of the Patent Office and the Court of Customs and Patent Appeals. The De Forest invention was subsequent to the invention of the patent in this suit.

■■ The appellee argues that the patent in suit is invalid under the provisions of Rev. St. § 4887, as amended (35 USCA § 32), because of the issuance of a French patent No. 532,750, twelve months before filing the application of the patent in suit. To constitute invalidity of the present patent by the French application, it must be shown that the inventions actually claimed in that foreign country and those of the patent in suit are identical. It is not enough to say that the French patent may disclose the invention of the later United States patent, when it is not therein claimed. Leeds & Catlin Co. v. Victor Talking Machine Co., 213 U. S. 301, 29 S. Ct. 495, 53 L. Ed. 805; General Electric

Co. v. Alexander, 280 F. 852 (C. C. A. 2). The question becomes one of identity between them. There is no such identity here. The French patent is for a photo-phonetic film, namely, an apparatus or product claim, which cannot be identical with or fatal to a process claim. Leeds & Catlin v. Victor Talking Machine Co., supra; Fireball Gas Tank & Illuminating Co. v. Commercial Acetylene Co., 239 U. S. 156, 36 S. Ct. 86, 60 L. Ed. 191. The French patent is essentially a proposal for escaping from the difficulties of recording natural sounds accompanying the action. The significance of the independent recording of concomitant sounds is apparent from the language of the specification. Nowhere in the French claims or specification is there a suggestion of the characteristic feature of separate and independent development of the negatives to compensate for different exposure in recording. The purpose of the French patent was to avoid the photographing of sounds "from sources which are scenic." Here the purpose is just the opposite. The distortions of sound and pictures which apparently had been unavoidable in single film practice and which had made scoring preferable have now been removed. The French patent in no way treats of separate development.

■ The patentees fully complied with Rev. St. § 4887, as amended (35 USCA § 32), as to the French patent by filing an application substantially identical therewith in the Patent Office of the United States on April 4, 1921, ten days after the filing of the French application. While the application was pending in the United States, they filed a German application for the invention here in suit, and, within the allowed period, thereafter filed the United States application for the patent in suit. The two United States applications were thus copending, and, while the patentees have been insistent and consistent in their position that the inventions covered by the successive patents were not the same, still, if the inventions were the same, the first United States patent was filed within the convention period, and, their second application, being copending, is true continuation of the first. Novadel Process Corp. v. J. P. Meyer & Co., 35 F.(2d) 697 (C. C. A. 2); Victor Talking Machine Co. v. American Graphophone Co., 145 F. 350 (C. C. A. 2).

■ The appellees' process infringes the claims in suit. The stipulation provides that the appellee's process for producing a combined sound and picture positive film for talking motion pictures comprises recording photographically a sequence of pictures on one length of film and simultaneously recording photographically a series of sounds accompanying the scenes on a separate film. The picture negative and sound negative are developed separately and in different developers; the choice of developers and the time of development being such as to give the desired result. The picture and sound negatives thus separately made and separately developed are printed successively in properly spaced relation on the same surface of a positive film. In this manner a single positive film carrying the sound sequences and picture sequences is produced. There is no material difference between the purpose for which the appellee uses the process and that described in the patent. In any case, the appellee uses the process of the patent and achieves the results intended by the patentees. The patent is valid and infringed.

Decree reversed.

SWAN, Circuit Judge, dissents.