31 C.C.P.A.(Patents)

## Application of THAYER.

### Patent Appeal No. 4868.

Court of Customs and Patent Appeals.
June 26, 1944.

Morrison, Kennedy & Campbell, of Washington, D. C. (Donald Campbell, of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting claims 61 to 66, inclusive, 68, and 69 in appellant's application for a patent for an alleged invention relating to a heat-resisting wall construction and a method of making the same.

Seven claims were allowed by the Primary Examiner.

Claims 61 and 62 relate to a furnace wall. Claims 63 to 66, inclusive, relate to a furnace wall panel. Claims 68 and 69 are method claims and relate to the pre-forming of panels.

Claims 61, 66, and 68 are sufficiently illustrative of the appealed claims. They read:

"61. An exteriorly repairable refractory wall construction, for an industrial furnace or heat chamber wall, having a system of wall panel members including a number of separate and exteriorly removable panels mountable collectively to close the wall area, each of a limited minor portion of the entire wall area; said removable panels being separately portable and each consisting of a preformed unitary and rigid combination of panel backing and facing portions, the backing comprising a rigid metallic carrier for the facing and having exterior extensions for the readily removable mounting of the panel in the wall by exteriorly accessible attaching means, the facing being a refractory slab of panel size and comprising a monolithic layer of castable material plastically molded and set directly upon the panel backing, with means unifying tightly and permanently the panel backing and its facing layer comprising posts projecting from the backing into the facing and spaced reinforcement positioned by the posts, said posts and reinforcement being wholly plastically embedded and permanently locked in said molded facing layer; said system of panel members presenting a refractory wall facing which is sub-stantially continuous except in having joints between the several monolithic facing layers of the several exteriorly removable panels."

"66. For a refractory or furnace wall comprising a number of exteriorly removable panels collectively closing the wall, a preformed and separately portable panel composed of unitarily combined backing and facing portions, wherein the backing comprises a rigid metallic carrier for the facing and has exterior extensions for the removable mounting of the panel in the wall, and the facing comprises a panel size monolithic refractory slab of castable material plastically molded and set directly upon the panel backing, with means unifying tightly and permanently the panel slab and rigid backing comprising transverse posts projecting from the backing into the facing and reinforcement means positioned by the posts, said posts and reinforcement being wholly embedded and permanently locked in said plastically molded facing slab; and said facing slab being composed of plural strata of different heat-resisting materials in graded order with the more insulating material nearest to the backing and the more refractory material nearest to the heat-exposed face of the slab."

"68. The method of preforming unitary panels for an exteriorly-removable-panel furnace wall, comprising first preforming a rigid metallic backing portion for each panel, adapted to be mounted detachably in the wall, then securing upon the backing a system of reinforcement substantially co-extensive with the area of the panel including several inward extensions in the form of posts adapted for interlocking with a facing slab portion and then premolding a refractory layer of settable plastic facing material directly upon such inner side of the backing in a manner and to a thickness to form a slab and to embed wholly and interlock with such reinforcement, and allowing the setting thereof to take place; thereby to produce a unitary transportable panel adapted to be applied and attached to and removed from such wall and consisting of tightly and permanently combined rigid backing member and refractory facing slab."

The references are:

Brinckerhoff et al., 2,144,598, January 17, 1939;

Scott, Jr., 2,148,281, February 21, 1939;

Brooke (British), 6,548, 1904.

Appellant's wall structure comprises a frame work of rigid members which support panel members. The panels comprise a metal backing plate and a heat-resisting hardened plastic facing of refractory monolithic layers of castable material, plastically molded and placed directly upon the panel backing. The backing plate has rearwardly projecting flanges, so arranged that the panels may be secured to other flanges which are secured to the main frame.

Appellant's structure is so arranged that any individual panel or slab of refractory material may be readily removed and replaced in the furnace merely by manipulating certain bolts, the arrangement of which need not be here described.

As will be observed from quoted claim 66, appellant's monolithic refractory panels may be composed of several different heat-resisting materials.

The patent to Brinckerhoff discloses a wall of replaceable panel sections, composed of fire-brick, backed by insulating material, and a steel casing member. The patentee states that the insulating fire-bricks are light-weight refractories and have the ability to withstand furnace conditions at high temperatures.

The metal backing member in the Brinckerhoff panels has rearwardly projecting flanges similar to those of appellant, and the brick panels in the patentee's structure may be removed by an arrangement similar to that set forth in appellant's application. The patentee does not disclose the use of a monolithic slab such as is set forth in the appealed claims. Furthermore, in the Brinckerhoff structure the panels are composed of several bricks, whereas the panels in appellant's structure comprise a single slab of refractory material. So, the difference between the Brinckerhoff disclosure and that of appellant is that the patentee's panel is made up of several bricks, whereas appellant's panel consists of a monolithic slab, and the patentee does not disclose a plurality of strata of different heat-resisting materials *in graded order,* as called for by claim 66.

The patent to Scott "relates to heat insulation and particularly to insulation for the steel walls of bulkheads and the like in ships." The patentee discloses a plastic slab of heat-resisting and insulating material secured to a sheet of perforated metal having relatively large openings therein. The patentee's backing is spaced from the wall a distance of about one-third to two-thirds the depth of the insulation. The backing reinforcing metal is provided with protruding portions adapted to be secured to the surface of the wall. The patentee states that his insulating structure may be applied to walls or ceilings, the insulating material being applied through the interstices of the perforated metal and extending over the metal so as to afford a smooth or decorative finish. The insulation is "formed of fibres of slag wool combined with a clayey ingredient and a hydraulic setting cement such as Portland cement."

The patent to Brooke discloses a metal wall and a monolithic lining of heat-resisting material for a furnace. The patentee, however, does not disclose the sectional panel construction called for by the appealed claims and disclosed in the Brinckerhoff patent. The patentee does disclose that his metal wall is covered with fire-clay, held in position by expanded metal mesh and posts. He also discloses a similar arrangement with a non-conducting layer of asbestos fibers between the fire-clay and the metal wall, that is, "layers of suitable fire-resisting material, as fire-clay or ganister or a mixture thereof with suitable fibrous binding material, as asbestos" are secured to the metal wall. In other words, the patentee discloses a plurality of different heat-resisting materials in graded order, as called for by claim 66.

It may be stated at this point that counsel for appellant concede that the patent to Brooke discloses the mechanical elements claimed by appellant for holding a plastic or fire-clay lining upon a furnace wall, and that appellant makes no claim to novelty in such an arrangement. It is also conceded by counsel for appellant that the patentee discloses a monolithic lining for his furnace. It is contended by counsel that the patentee does not disclose a self-setting plastic. However, the plastic material called for by the appealed claims is old, as stated in appellant's affidavit.

It is apparent, however, that the patentee Brooke does not disclose a pre-formed panel arrangement, as called for by the appealed claims and as disclosed by Brinckerhoff.

In his statement to the board, dated May 4, 1942, the Primary Examiner stated that the method claims (Nos. 68 and 69) read substantially on the patent to Brooke, except for the recitation of a pre-formed

panel. The examiner then stated that it was a matter of common knowledge that in the last ten years the pre-fabrication of houses built by means of large panels has been widely discussed in the public press; that the patent to Brinckerhoff plainly teaches the idea of pre-formed panels, specifically in the furnace-wall art; that the other claims on appeal were "specific to exterior extensions on the backing for the ready removability of the panel. Such extensions are fully shown by Brinckerhoff, so that the only question is whether it involves invention to substitute a plastic slab for the individual bricks of the Brinckerhoff panel." The examiner then called attention to the fact that appellant states in his application that his panels might be made up of pre-formed bricks or blocks suitably secured together, but that he preferred a monolithic slab of plastic material.

Subsequent to that statement of the examiner, appellant filed an affidavit which is of record. It is stated therein, as it is in the brief of appellant's counsel, that appellant had been associated with his assignee (Quigley Co.) as engineer and inventor for many years; that about 1910 he became familiar with the "practical developments in the art of furnace wall construction in this country referring to industrial and utility furnaces"; that the walls of furnaces for the past decade were fire-brick assemblies, mounted so that they could be removed from the interior of the wall; that it was accepted in the involved art that, in order to make repairs, the furnace had to be entered and the repair work done on the inside; that such an arrangement caused considerable economic loss, not merely because of the cost of the repairs but because it was necessary to shut down the furnace; that "Prior to my invention I was aware of no instance of any furnace wall practically adapted to renewal or repair of damage from the exterior"; and that as a result of intensive study and consideration he conceived the subject matter set forth in the appealed claims. *The affiant further stated that the references cited against the involved claims were not known to him before his conception of the alleged invention;* that his structure met with considerable commercial success; that *castable refractories that could be used in the making of his wall had been known for at least fifteen years;* and that it did not *occur to him or apparently to others that such an advantageous wall as that defined by the appealed claims could be constructed from such castable refractories.* He further stated that one of the advantages of his structure over that disclosed in the Brinckerhoff patent was that each of his panels was composed of a single slab, whereas each of the Brinckerhoff panels contained many bricks; that the Brinckerhoff panel would be more subject to penetration by the corrosive sulphur gases because of the many joints between the bricks composing each of the panels; and that his structure would save in cost about 50 per cent in materials and about 65 per cent in labor, as compared with the Brinckerhoff structure. Another advantage claimed by appellant was that his refractory slabs might be stratified by applying successive layers of graded plastics composed of "two or even three strata."

Subsequent to the filing of appellant's affidavit, the examiner reported to the board under rule 138 of the Rules of Practice in the United States Patent Office, and stated that it was alleged in appellant's affidavit that he was not familiar with the references cited against the involved claims; that appellant was in error in stating in his affidavit that the Brooke reference had no panels; and that—

"The Brooke disclosure is broad, referring merely to the formation of plates for furnaces. It is not said specifically whether these are or are not panels * * *. It would be entirely consistent with Brooke's disclosure to make his wall of preformed panels, even though it is true that Brooke does not point-blank state that his wall is so made."

The examiner further stated that appellant was in error in stating that the "joint lines" between bricks of a panel would be subject to leakage, that leakage could only occur through the joints between the panels and "in this respect the joint lengths of applicant and Brinckerhoff are identical."

In its decision, the Board of Appeals, in substance, affirmed the reasons assigned by the Primary Examiner for rejecting the appealed claims.

It is contended here, among other things, by counsel for appellant that the British patent to Brooke is not entitled to any weight beyond what it actually discloses, with which contention we agree. It is also contended by counsel that that patent

taught little or nothing that would aid in the conception of appellant's alleged invention, with which contention we cannot agree.

■ The arguments here of counsel for appellant, although more in detail, follow substantially the statements contained in appellant's affidavit. We deem it unnecessary, therefore, to set out all of the arguments presented here by them. It is argued by counsel, among other things, that the Scott patent is in a remote art. However, it is stated in appellant's application that the word "wall" as it appears in his specification was intended "to include any wall or housing of an enclosure or chamber subject to heating. * * * [and that] the word 'chamber' " was "intended in its broad sense" to include "flues and other enclosed spaces." So the mere fact that the patent to Scott relates particularly to bulkheads for ships does not make that patent remote art.

It is apparent, from what has been said, that the prior art taught the use of panels for walls for furnaces so as to make it comparatively inexpensive to repair such walls by removing the panels from the outside, and that the prior art discloses the use of monolithic material for linings for industrial furnaces. Furthermore, it is stated by the Primary Examiner that wall structures are frequently constructed from a series of pre-formed panels.

Appellant did not request an affidavit by the examiner with regard to that statement, as he might have done under rule 66 of the Rules of Practice in the United States Patent Office. We must, therefore, accept the statement as true.

■ It is now the rule, and always has been so far as we are aware, that the question of the patentability of claims depends upon whether or not an applicant, with the cited references before him, could make the structure claimed in his application without the exercise of the inventive faculties. If he could, then no invention is present. Furthermore, the rule is applicable whether or not the applicant had ever seen any of the cited references.

■ We are of opinion that the disclosures in the references before him, appellant, or any one skilled in the art, could have produced appellant's structure without the exercise of the inventive faculties.

■ It is true that it appears from appellant's affidavit that his wall structure has met with commercial success. Whether the structure defined in the allowed claims, hereinbefore referred to, is the cause of such commercial success, we are unable to say. However, commercial success is only one element to be considered in determining the patentability of claims, and when, as in the instant case, the prior art either discloses or plainly suggests the structure and the process defined by an applicant's claims, commercial success is not of great importance.

We are of opinion that the tribunals of the Patent Office reached the right conclusion. Accordingly, the decision of the Board of Appeals is affirmed.

Affirmed.