34 C.C.P.A.(Patents)

### Application of BLAIR et al.
### Patent Appeal No. 5319.

Court of Customs and Patent Appeals.
June 17, 1947.

Charles C. Willson, of New York City (Elmer Stewart, of Washington, D. C., of counsel), for appellants.

470

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before BLAND, Acting Presiding Judge, and HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

BLAND, Acting Presiding Judge.

Appellants have here appealed from the decision of the Board of Appeals of the United States Patent Office which affirmed the action of the Primary Examiner in rejecting claims 11 and 45 to 50, inclusive, of their application for a patent on an apparatus for making sponge rubber articles.

While the claims of appellants' application, under the "Dual Prosecution" procedure instituted by notices in the Patent Office (see Wolcott, Manual of Patent Office Procedure, Ninth Edition, 1947, p. 52), were examined and passed upon by three examiners, the rejected claims above enumerated were passed upon by only two examiners. The holdings of the two examiners were made in two statements for the board.

Several claims were allowed by the examiners and three claims were allowed by the board. The allowed claims, for the most part, went to the details of the various means recited in the claims.

It will be noticed that the claims on appeal are very broad. They, for the most part, consist of a recital of undescribed means.

Claims 11, 45 and 48 are regarded as illustrative of the claimed subject matter and follow:

"11. In an apparatus for treating liquids capable of being set into solid form, a foaming cell constructed and arranged to generate latex foam or the like and to feed the foam in automatically regulated quantities of predetermined bubble size toward a receiving station; means to mix a sensitizing ingredient with said foam en route from said foaming cell to said receiving station, a movable surface to receive said foam at said station, and a pair of lengthwise movable deckle belts, disposed in spaced relation longitudinally of said movable surface."

"45. The combination of means for generating from a liquid dispersion of rubber or the like a vulcanizable liquid foam and for delivering said foam continuously, a spreading station for receiving said foam, vulcanizing means, conveying means adapted to convey the foam from the spreading station through the vulcanizing means, and means for operating the generating means and the conveying means in timed relation to produce a uniform strip of vulcanized foam at a uniform rate."

"48. The combination of means for generating from a liquid dispersion of rubber or the like a vulcanizable liquid foam and for delivering said foam continuously, a spreading station for receiving the foam, vulcanizing means, intermittently operable cutting means, conveying means for conveying the foam from the spreading station through the vulcanizing means to the cutting means and means for operating the generating means, conveying means and cutting means in timed relation to produce uniform pieces of vulcanized foam."

The references relied upon by the tribunals below in rejecting the appealed claims are as follows:

McGuire, 1,382,207, June 21, 1921.
Blair et al., 1,993,082, Mar. 5, 1935.
British, 471,899, Feb. 11, 1937.
German, 647,732, July 15, 1937.
Murphy et al., 2,161,308 June 6, 1939.

The German patent is cumulative to the Murphy et al. patent and in view of our conclusion requires no separate discussion here. The patent to Murphy et al. discloses a process and apparatus for producing sponge rubber articles and the patentees teach that a frothed aqueous emulsion or dispersion of rubber or similar material is passed from a hopper and on to a moving belt. The rubber material then goes through heating and vulcanizing chambers. So-called deckle belts are provided at the sides of the moving belt.

The McGuire and Blair et al. patents were cited for the purpose of showing cutters for severing a continuous rubber strip, the cutters being moved in synchronism with the strip.

The first group of claims, 11, 45, 46 and 47, make no mention of the cutter. Claims

48, 49 and 50 are drawn to include that element as a part of the combined machine. The basic references above noted apply to both groups, and Blair et al. and McGuire are added as showing the state of the art with respect to cutters and are cited only as to the second group.

■ The examiner's rejection, and that of the board, was that the assembling of the various old elements called for by the counts did not involve invention and that the elements performed their old functions in the old way in the alleged new combination.

Murphy does not show in his drawings the means by which he prepares his emulsions or dispersions. He refers to them as being "frothed." This frothing can be done by an agitator such as is shown in British patent No. 471,899.

The important feature emphasized by appellants here in urging the presence of invention in the appealed claims is the fact that they call for a continuous foam delivery. It was the view of the Patent Office, as it is ours, that Murphy delivered the foam continuously from his hopper. The spreading station provision of the claims is illustrated by the knife shown in the drawings of Murphy, and Murphy also shows vulcanizing means.

Appellants stress the feature of their device relating to the delivery of foam at the spreader at a substantially constant rate; in other worlds, they urge that their machine is so constructed that it can be easily regulated and synchronized to avoid the so-called batch method, which is slow and requires considerable manual labor, and they urge further that their machine can be operated so as to produce continuous cut sheets of sponge rubber.

It is our view that Murphy contemplates continuous operation and that if he desired to stop the cutting operation of the machine it would not amount to invention to provide a means for doing so. Blair et al. and McGuire show cutting devices of this character. So far as we understand appellants' contentions, the cutting device provided by them is not new and they do not claim that it, of itself, is inventive but that the combination including it, as defined by the appealed claims, does involve invention.

The decision of the board necessarily is long and we think it sufficient to quote the pertinent portion as applied to the particular claims here involved. The board said:

"The examiner states that the general combination of claims 11 and 45 to 50 inclusive is shown in either the German patent or Murphy et al. He takes the position that the foam which is supplied to the conveyors of either of these patents must obviously have been prepared by some conventional means and at a rate sufficient to insure the continuous operation disclosed in the patents. He holds that no invention is involved in the broad idea of providing some kind of means to properly time the operation of any devices which it is desired to operate in synchronism. In his group rejection of claims 11 and 45 to 50 inclusive the examiner held that no invention would be involved in discharging the rubber web from the conveyors of Murphy et al or the German patent to a cutting device such as shown by Blair et al and McGuire. This combination of references, however, only applies to claims 48, 49 and 50 since these are the only claims that include a cutter.

"Applicant objects to the German patent and the Murphy et al patent on the ground that in these patents the foam is not fed to the conveyor in 'automatically' regulated quantities as recited in claim 11, and that no means is shown for timing the operation of the various components.

"We have carefully considered applicants' argument but we are inclined to agree with the examiner that since the devices of Murphy et al and the German patent are intended to operate continuously the foam must necessarily be supplied at least in a roughly timed relation to the travel of the conveyor. For example, it is obvious that in operating the Murphy device the foam must be supplied to hopper 2 at a rate sufficient to prevent the foam level from falling below the lower edge of scraper blade 5. On the other hand, the foam will obviously not be supplied so fast as to exceed the capacity of the hopper. A mere recitation, as in claim 11, that the foam is fed in 'automatically' regulated

472

quantities will not serve to patentably distinguish from Murphy et al or the German patent since it is not patentable merely to do by automatic machinery what has commonly been done by hand. Jones et al. v. General Fireproofing Co., 6 Cir., 254. F. 97, 260 O.G. 562, 1919 C.D. 241. We take the same view with respect to claim 45 which recites means for operating the foam generator and conveyor in 'timed relation,' and claims 46 and 47 which recite means for operating the foam generator to deliver foam to the conveyor 'at a substantially constant weight rate,' since no structural limitation on the means for producing the synchronous operation is recited.

"With respect to claims 48, 49 and 50, we agree with the examiner that no invention would be required to provide the device of Murphy et al or the German patent with a cutter such as shown by Blair et al or McGuire. The cutters of the Blair and McGuire patents are 'intermittently operable cutting means' as recited in these claims. They do not stop the advance of the foam during the cutting operation as recited in claims 49 and 50 because the type of cutter employed is capable of cutting the foam while it is in motion. Applicants must stop the movement of their foam while the cutting operation is performed because of the particular type of cutter employed by them. However, there is nothing in the appealed claims that defines any particular kind of cutter so that in our opinion the cutters of the Blair and McGuire patents are the full equivalent of applicants' cutter as claimed. We find no error in this rejection."

Further grounds of rejection on the part of the examiner were approved by the board, but since we agree with the rejection of the examiner as affirmed by the board in the above quoted portion of the board's opinion it is unnecessary for us to discuss the other grounds of rejection.

Appellants in their brief state:

"It is therefore urged that since the references cited do not disclose the complete combination claimed they do not meet the claims.

"In this connection attention is invited to the following C.C.P.A. decision—Appli-

cation of Thayer, 143 F.2d 996, 31 C.C.P. A. (Patents) 1224 at page 1230 on which the following appears:

" 'It is now the rule, and always has been so far as we are aware, that the question of patentability of claims depends upon whether or not an applicant, with the cited references before him, could make the structure claimed in his application without the exercise of the inventive faculties.' "

 We here apply that rule and conclude that what appellants have done is the obvious thing for those skilled in the art to have done, and we agree with the board that all that appellants have done, as defined by the appealed claims, does not amount to invention.

The decision of the Board of Appeals is affirmed.

Affirmed.

By reason of illness, GARRETT, Presiding Judge, was not present at the argument of this case and did not participate in the decision.