## A. J. DEER CO., Inc., v. U. S. SLICING MACH. CO.

Circuit Court of Appeals, Seventh Circuit.
October 18, 1927.

Nos. 3755, 3756.

1. Patents ⊚⟹328—1,026,721, claims 1, 2, 3, 6, 7, 8, 14, 25, 26, and 27, for meat holder, held valid.

Thomas patent, No. 1,026,721, claims 1, 2, 3, 6, 7, 8, 14, 25, 26, and 27, for improvement in meat holders in slicing machines, *held* valid.

2. Patents ⊚⟹72(1)—Whether arts or uses are analogous depends on similarity of elements and purposes.

Whether arts or uses are analogous depends on the similarity of their elements and purposes.

3. Patents ⊚⟹72(1)—If elements and purposes of one art are so related and similar to those of another as to make an appeal to one skilled in such art, the two must be said to be "analogous."

If the elements and purposes in one art are related and similar to those in another art to such extent as to make an appeal to the mind of a person having mechanical skill or knowledge in the second art, the two arts must be said to be "analogous."

Appeals from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Patent infringement suit by the U. S. Slicing Machine Company against the A. J. Deer Company, Inc. From a decree for plaintiff, defendant appeals. Affirmed.

John S. Powers, of Buffalo, N. Y., for appellant.

Chas. M. Nissen, of Chicago, Ill., for appellee.

Before ALSCHULER, PAGE, and ANDERSON, Circuit Judges.

PAGE, Circuit Judge. [1] These are appeals by defendant (appellant) from a decree finding validity and infringement of claims 1, 2, 3, 6, 7, 8, 14, 25, 26, and 27 of letters patent No. 1,026,721 to Thomas, for improvement in meat holders.

Defendant's contention is that the invention is anticipated in the prior art, that it is a mere double use of the prior art sawmill dogs, and that the claims are too broad.

In the operation of meat-slicing machines, in general use for many years, the meats were clamped down and held upon the table of the machine by a ratchet bar, but, as stated in the Thomas specification, owing to the nature of the clamping arrangement, considerable difficulty and inconvenience was experienced in cutting the short end pieces.

Thomas undertook to devise a means whereby those short end pieces could be held while being sliced.

The holder was intended primarily for use in connection with meat-slicing machines, but, as claimed, may be used independently of any slicing machine.

If validity is established, infringement is admitted.

It is thought that claim 1 covers the device in question:

"1. A device of the class described embodying a surface adjacent which the meat is arranged, meat-holding prongs co-operating with the said surface and adapted to be projected outwardly and beyond the plane of such surface into engagement with the meat and to be retracted, and means for thus projecting and retracting the prongs."

The prior art patents, other than those relating to sawmill dogs, are: Oxley, No. 42,715, issued May 10, 1864; Edwards, No. 825,529, issued July 10, 1906; Lorenz, No. 1,049,245, issued December 31, 1912; and British patent to Peebles, No. 26,438, issued in 1906.

The use of the Oxley patent was described in the specification as: "A peculiar construction and arrangement of apparatus for cutting, slicing, and chopping bread, cheese, suet, vegetables, tobacco, leather, or any other substance capable of being cut by a knife"—and was called an improved bread cutter.

The Edwards and Lorenz devices were for slicing machines. While there was some sort of holding device on each, the holding of short end pieces was not one of the problems undertaken to be solved.

Counsel on both sides and the witnesses have somewhat confused the issue by discussing Oxley, Lorenz, and Edwards generally, and by failing to limit such discussion to the holding device. With reference to the Oxley invention, the question discussed was whether the device as a whole was ever practical or workable.

We confine ourselves to a consideration of the question, Is there anything in the prior art patents referred to that so directly or certainly pointed the way to the Thomas device that it must be said the latter was a product of mere mechanical skill and did not involve inventive genius? It seems to us apparent, from an examination of the Oxley, Edwards, and Lorenz devices, that the question as to them must be answered in the negative.

Peebles, in 1906, undertook to solve the identical problem before Thomas. Beyond

the fact that Peebles had a block, against the face of which the meat to be sliced was to abut and be held there by pins or skewers, fastened to the block and inserted in the meat close to the face of the block, there seems not to be the slightest resemblance between that device and the one in suit. We must assume that Peebles, having directly before him the problem that confronted Thomas, applied to its solution his best inventive genius, and yet that which he produced appears to be crude, cumbersome, and more than likely inefficient and uneconomical in use because of the time necessarily lost in applying it to any use.

Coming to the prior art sawmill dogs, Can they fairly be relied upon to defeat the Thomas invention because they are in an analogous art or show a double use?

We find frequent use in the books of the terms "analogous art" and "analogous use." Of the former, we have found no definition. In speaking of "analogous use," Robinson on Patents (page 355, note) says:

"If * * * the new use is so unlike in its essential character to the preceding ones that it required an exercise of inventive skill to produce it, then the use is a new invention and is patentable."

To the mind of the writer of this opinion, that is simply "the blind leading the blind," and gets one nowhere.

[2, 3] We are of opinion that whether arts or uses are analogous depends upon the similarity of their elements and purposes. If the elements and purposes in one art are related and similar to those in another art, and because and by reason of that relation and similarity make an appeal to the mind of a person having mechanical skill and knowledge of the purposes of the other art, then we are of opinion that such arts must be said to be analogous, and, if the converse is true, they are nonanalogous arts.

Whether we call the art in which sawmill dogs are used by any one of a number of names that might be attached to the use of sawmills and sawmill appliances in the manufacture of lumber and like materials, we are able to visualize little or no similarity between the processes used in making and producing the lumber and material in a sawmill and those processes used in the meat industry for the slicing of meat. Beyond the fact that hooks are used to hold the logs in place while they are being sawed, and, in slicing the meat, hooks are used to hold it in place, there is no similarity. Logs are generally of large dimensions both in length and diameter, are hard in substance, and are supported, and need to be supported, in but few places along their entire length, whereas, meat is soft and pliable, with little holding strength. The device in question is applied only to small end pieces, and to hold even those small pieces a great many hooks or pins must be inserted at close intervals. The record shows that large pieces could not be so held.

We are unable to see similarity in either the arts or in the uses as represented by the invention in suit and that of the sawmill dogs.

The sawmill dogs are very old, and the patents relied on were granted all the way back through the years to 1871. From the record, it appears that the demand for a holder of short meat ends, for the purpose of slicing them, was manifest in the meat industry, as evidenced by the Peebles invention, something over twenty years ago. If the sawmill dogs had appeared in a patent issued between fifty and sixty years ago, and were not thereafter heard of, it might not be surprising that they made no appeal to others considering the question of material holding appliances; but, having come into use then or earlier, and having remained in constant use for all of the years, and frequently appearing in other patented devices, it seems that the fact that they made no appeal to Peebles, or to any one else seeking to solve the problem of holding short meat ends for slicing purposes, is very strong evidence that the two things were not in analogous arts and did not constitute a double use or analogous uses.

The record shows that defendant reproduced sawmill dogs in the shape of a meat holder, admittedly with small success. The fact remains in the record that the defendant, instead of using such an appliance, paid the plaintiff's device the compliment of adopting it in connection with defendant's slicing machines.

Plaintiff's device was accepted by the public. It is very different from any sawmill dog construction shown in the record. It is economical in construction, efficient in use, and seems to perform well the work for which it was intended.

The decree should be, and it is affirmed.