## In re SMITH.

### Patent Appeal No. 3439.

Court of Customs and Patent Appeals.
April 8, 1935.

Roy W. Johns, of Chicago, Ill., for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

No claim was allowed, and claims 1, 2, 4, 5, 6, and 7 of appellant's application for a patent involving a method of dressing and preparing meat were rejected by the Primary Examiner of the United States Patent Office, and it is from the decision of the Board of Appeals affirming the action of the Examiner in rejecting said claims that appeal has been taken to this court. The rejected claims follow:

"1. The method of dressing carcasses which consists in separating desired bone freed parts immediately after butchering and while still warm and flaccid, then moulding them to a predetermined shape, and while so moulded chilling the same, whereby they become set, and then removing them from the moulds preparatory to marketing.

"2. The method of treating fresh killed meat which consists in moulding a specific part thereof while still limp and retaining its animal heat, and then chilling the same, whereby it becomes set and adapted to retain its moulded form, and then removing it from the mould preparatory to marketing.

"4. The method of preparing meats for market which consists in, immediately after killing, separating parts from the carcass or carcasses, arranging in parallel grain relation and co-forming such parts to predetermined shape and size in a mould, chilling the same in the mould, and then removing the mass from the mould preparatory to marketing.

"5. The method of preparing meats for the market which consists in separating selected, skeletal-control muscular parts from the rest of the carcass or carcasses of freshly killed animals, moulding the same together in parallel grain relation to desired shape and size and thereupon chilling the same as thus moulded.

"6. The method of preparing meats for the market which consists in separating bone freed parts from the carcass, combining and forming such parts to predetermined shape and sizes in parallel grain relation in moulds, chilling the same in the moulds, removing from the moulds, slicing across the grain, restoring the slices to their previous relative position, and wrapping the product for the market.

"7. The method of preparing meats for the market which consists in separating selected, skeletal-control muscular parts from the rest of the carcass, moulding the same to desired shapes and sizes with strips of fat interspersed, thereupon chilling the same as thus moulded, and removing the product from the moulds."

The Examiner described the alleged invention in the following language: "The subject matter of the instant case relates to the treatment of meat, the process comprising separating bone freed parts from meat carcasses preferably immediately after the butchering of the animals, at which stage the meat is warm and flaccid. The warm, bone freed parts are then placed in molds and shaped therein, and, while disposed in the molds, subjected to chill-

ing whereby the meat becomes set in the shape of the mold. It is then removed from the mold and wrapped, or, alternatively, it is sliced after removal from the mold, the slices are assembled, and then they are wrapped to form a package such as shown in Figure 4 of the drawing. There are certain variations set forth in some of the claims such as interspersing strips of fat among the strips and the like of the meat proper, and arranging the parts of the meat in the mold so that the grain thereof is in a parallel relation. * * * "

The claims were rejected upon the prior art, and the references relied upon are: Chemioux (Reissue), 6,074, October 6, 1874; Lotz, 1,157,016, October 19, 1915; Waters, 1,381,526, June 14, 1921; Petersen (Reissue), 15,683, September 4, 1923; Cushman, 1,676,730, July 10, 1928. Australian patents to: Hallett, 10,682, of 1927; General Foods Co., 12,125, of 1928.

Chemioux relates to cooked corn beef. After the bones have been removed, the meat is packaged and pressed. The patentee states that the meat is arranged so that the grain extends in one direction so as to permit crosscutting the meat.

The Petersen patent involves a method and apparatus for handling fish, cuts of meat, and the like, in which the material is tightly packed in a pan, and then placed in a can and refrigerated by immersing the can in brine in a tank.

The Lotz patent relates particularly to the process of preparing boneless, cooked hams. The ham is boned and cooked and then compressed.

Waters teaches the preparation of packing tenderloins with strips of beef fat, all of which are bound in a roll with strings. The object is to get crosscuts of the meat, uniform in quality.

Cushman prepares smoked joint meats by placing the hot cooked ham or other piece of joint meat in a suitable container and pressing the same so as to deform it to the shape desired. The meat is cooled while being held under pressure in a container.

The Australian patent to Hallett is for a method and apparatus of preservation of perishable foods, in which the food is wrapped in grease-proof paper and packed in cartons, and then, by the use of a conveyor belt, passed through a refrigerating chamber.

The Australian patent to General Foods Company also relates to a method and apparatus for preparing food products, including "fresh" meat. The meat is formed into blocks by the use of a rectangular carton, and the blocks are squeezed between metal plates and then frozen or chilled.

Claims 1 and 2 were rejected by the Examiner on each of the patents to Petersen, Hallett, and General Foods Company in view of each of the patents to Birdseye and Petersen. The Birdseye patent is not listed or discussed by the Examiner, and we find no such patent in the record.

The Board, in affirming the Examiner's rejection of claims 1 and 2, referred to the Birdseye patent, but did not discuss it.

Claims 4, 5, and 6 were rejected for lack of invention for reasons advanced in the rejection of claims 1 and 2, in view of the Chemioux patent. The slicing feature of the claims is disposed of by the Examiner in the following language: " * * * The merchandising of various edible commodities in assembled slice form is old and well known, as, for example, the sliced bread so commonly found on the market today."

Concerning the two Australian patents, the Examiner stated: " * * * Relative to the citation of the Hallett and General Foods Company patents, the pertinency of which applicant has attacked in part because they are 'foreign' patents, it may be stated that there is now a domestic patent (No. 1,773,079) which contains substantially the same disclosure as the two foreign patents and which has an effective reference date prior to either of the foreign patents. Hence, the 'foreign' patent argument need not be considered."

It will be noted that patent No. 1,773,079 is also not made part of the record.

The Examiner later, in referring to claim 7, has the following to say: "Claim 7 has been rejected for lack of invention over the art and for the reasons set forth above in rejecting claims 1 and 2, in view of the Waters patent. Said patent shows it to be old to embody strips of fat and intersperse the latter in pieces of meat. To do similarly in any of the procedures of Hallett, General Foods Company, and Petersen is obviously uninventive."

The Board, speaking generally of the claims, said:

"Respecting the limitation that the meat is treated immediately after butchering and

while it is 'warm and flaccid,' the examiner relies upon the disclosures in the General Foods Co. patent and the patents to Hallett and Petersen. Reference also may be made in this connection to the Cushman patent, which describes the idea of wrapping meat (ham) consisting in placing it in a container 'while in a flaccid condition' and subjecting it to pressure.

"Concerning the distinction that the applicant is attempting to draw between a process involving the chilling of the meat and one involving the freezing of the meat, it may be stated that both steps being ordinary in this art, the one that may be selected involves nothing more than the exercise of judgment. It is the condition of the meat when it is reshaped that is important, and not the length of time that has expired before the meat is reshaped.

"Claims 4 to 7, inclusive, stand rejected primarily on the references and for the reasons noted against claims 1 and 2, when considered in connection with the patent to Chemioux, which discloses the idea of arranging different pieces of meat in the mold in 'parallel grain relation' and cutting the meat across the grain; and the patent to Waters, which discloses it to be old to embody strips of fat interspersed· between pieces of meat.

"While it may be true, as contended by the applicant, that no one of the cited references discloses all of the limitations specified in the appealed claims, yet we agree with the examiner that no invention was involved in including with the basic steps of his process 'a plurality of procedures which are old and common practice in the art.' That it is justifiable in alleged processes of this kind to cite a plurality of references is supported by the decision in Ex parte Fine, 364 O. G. 511. As a matter of fact, there is no special cooperative relation between the steps comprising: (1) 'separating bone freed parts from the carcass'; (2) 'combining and forming such parts to predetermined shape and sizes'; (3) arranging such parts 'in parallel grain relation in moulds'; (4) 'chilling the same in the moulds'; (5) 'removing from the moulds'; (6) 'slicing across the grain'; (7) 'restoring the slices to their previous relative position'; and (8) 'wrapping the product for the market' (Claim 6). Obviously these are mere disconnected procedures in the handling of the meat from the time it is separated from the bone to the time in which it is wrapped for the market, and,

as pointed out by the examiner and shown by the cited patents, these procedures are all common in the art.

"In view of the above and for the reasons more particularly stated by the examiner, the decision of the examiner is affirmed."

In this court appellant's principal contention is as follows:

"The applicant has discovered, as is brought out clearly in his prior patent, that the stretching and tensioning of muscles tends to toughen them and that it is desirable, therefore, to chill the muscles in a relaxed condition.

"The present invention carries the concept of chilling in relaxed condition a step farther than applicant's prior patent, for here relatively absolute relaxation is secured since the muscles are chilled after separation from the skeletal structure, which also makes possible the arrangement of the meat with respect to its grain. The invention of the present application consists essentially in removing the individual muscles from the carcass and while yet warm and flaccid, disposing the muscles as desired, and chilling. It must be borne carefully in mind in considering the present application that *the inventive concept involved herein definitely requires the dissection of the animal while yet warm and flaccid and the disposition of the muscles before the onset of rigor mortis,* because only by such practice can the benefits of the invention be secured. [Italics quoted.]

"The present invention does not involve merely the dissection of an animal or merely the separation of the several muscles from the skeletal structure and from each other; the present invention involves a method requiring a particular sequence of steps in which the time element is critical."

▬ Appellant's former patent, which appellant states involved processing meat which had not been stretched or tensioned, is not found in the record, nor is it discussed by the Patent Office tribunals. This feature is not directly embodied in any of the claims. Appellant does not deny that, with the exception of processing meat while in a limp, warm, and flaccid condition, the steps of the process recited in the claims are each old in the prior art. He emphasized the importance of processing the meat while in the warm condition, and contends that his method claims, which include this important feature, define inventive and pat-

entable subject-matter, notwithstanding the prior art cited. Appellant also seems to complain of the Patent Office tribunals' use of the foreign patents, and states: " * * * The Court must treat the Hallett patent and the General Foods Company patent for precisely what they are—foreign patents."

We see no reason why the foreign patents should not be considered, since they clearly disclose the features relied upon by the tribunals.

Appellant also urges that "no one of the cited references disclose all the limitations specified in the appealed claims." It is not necessary that one reference disclose all the limitations of the claims. See In re Downs et al., 45 F.(2d) 251, 18 C. C. P. A. (Patents) 803.

Claims 6 and 7 were not strongly insisted upon by the appellant in this court, and we think that these claims were properly rejected by the tribunals below for the reasons assigned.

The chief feature of claim 5 which distinguishes it from claims 6 and 7, and relied upon by the applicant, is the fact that it calls for carcasses of freshly killed animals. It is clear to us that the General Foods Company patent anticipates this feature of the claim, since it treats of preparing "fresh" meats.

Claim 4 calls for treating the meat immediately after killing. This rather indefinite feature of the claim, we think, is also met by the General Foods Company patent.

It seems to us that, as the appeal is presented here, the issue narrows down to the question as to whether or not the feature of claim 1 "while still warm and flaccid," and that of claim 2 "while still limp and retaining its animal heat," lend inventive novelty to the claims. It was the view of the Patent Office tribunals that there was nothing inventive or novel in this feature, in view of the teachings of the General Foods Company patent relating to fresh meat, and of the teachings of the Cushman patent relating to smoked joint meats, which patent taught packaging of the meat while in a hot and plastic condition.

While it is true that no cited prior art discloses the packaging of meat while still containing animal heat, it is not thought that doing so was inventive in view of the teachings above referred to. While "fresh meat," as that term is generally understood, may include meat which is not warm with animal heat, it is certainly broad enough to include such meat. If appellant's contentions were accepted, any one operating under the General Foods Company patent could only process such meats as had become cold and rigid. This, we think, would unduly limit and narrow the rights granted by that patent. It is not thought that further discussion by us of the other features of the claims, which have been thoroughly discussed by the tribunals below, would be helpful. We approve of the views expressed by the Board.

The decision of the Board of Appeals is affirmed.

Affirmed.