**ALLIED WHEEL PRODUCTS,**
Inc. et al. v. RUDE.

No. 11681.

United States Court of Appeals
Sixth Circuit.

June 17, 1953.

on the brief; Pickrel, Schaeffer & Ebling, Dayton, Ohio, Owen & Owen, Toledo, Ohio, of counsel), for appellants.

H. A. Toulmin, Jr., H. H. Brown, Dayton, Ohio, on the brief; Toulmin & Toulmin, Dayton, Ohio, of counsel, for appellee.

Before ALLEN, McALLISTER, and MILLER, Circuit Judges.

McALLISTER, Circuit Judge.

This is an appeal from a judgment holding that the Rude patent [1] for a so-called spider wheel for harrows was valid and infringed. No appeal was taken from the finding and judgment of infringement. We are, therefore, concerned in this case only with the question of validity.

The patent has to do solely with the spider wheel construction and not the manner in which the wheel is carried by various agricultural machines. The wheel itself consists of a flat disc having a hub, and angle steel pointed teeth riveted alternately to opposite sides of the disc, with the inner ends of the teeth being engaged with the hub thereby relieving the rivets, or fastenings, from strain. The teeth extend for about one-half their length beyond the disc, thus forming a pointed toothed wheel.[2] The purpose of Rude's rotary wheel, as stated by counsel, is to penetrate the soil at spaced lateral and longitudinal points to break the earth's crust as the wheel rotates. As each staggered tooth rotates, it tends to lift the soil, and by this process, dislodges weeds that may be in the early stages of growth. It also provides a mulching effect on the surface of the soil, and, as appellee says, is most effective in the earlier stages of a weed, before it gets above the soil or just as it begins to sprout. It is declared that the problem is to dislodge the soil and weeds, and to turn the weeds over so that

Carl F. Schaffer, Toledo, Ohio (Carl F. Schaffer and Fred A. Smith, Toledo, Ohio,

---

1. Patent No. 1,845,936.

2. Claims 1 and 6 are typical of those in suit, and read as follows:

"1. A spider wheel or rotary hoe comprising a tooth carrying structure having a hub, angle steel pointed teeth, fastenings rigidly securing said teeth to said structure, the inner ends of said teeth being engaged with the hub thereby relieving the fastenings of strain."

"6. A spider wheel or rotary hoe comprising a disc having a hub, and two series of angle-steel pointed teeth, the teeth of the respective series being located on opposite sides of the disc and lying against, and secured to, the outer surfaces of the disc, whereby the teeth of one series are arranged in alternation to those of the other series."

they may wither without disturbing the growing crop; and it is emphasized that the construction of Rude's spider wheel permits ready repairing and replacing of teeth; complete independence and secure fastening of each tooth; great strength because of the angle steel construction and the abutment of the teeth against the hub; and the adaptability of the teeth to sharpen themselves automatically as they enter the soil.

Appellants contend that the patent is invalid for the reason that the patentee merely followed the teachings of the prior art and exercised only the routine skill of the mechanic in embodying in his spider wheel old elements with slight modifications which were expedients obvious to anyone skilled in the art. The Rude patent in suit was filed in 1930, and granted in 1932.

In support of their contentions, appellants rely upon the following patents prior to Rude to establish that invention was lacking in the patent in suit: Van Nostrand, No. 955,297, filed in 1909, and granted in 1910; Haldin, No. 1,178,515, filed in 1914, and granted in 1916; and Boyer (French patent), No. 666,367, filed in 1928, and granted in 1929.

The Van Nostrand spider wheel for cutting into and pulverizing soil has pointed teeth secured to a disc by fastenings alternately secured to the opposite sides of the disc, and with the inner ends of the teeth abutting the central hub. The above construction is the same as that of the patent in suit except that the teeth are made of flat steel, and not angle steel, as in Rude's patent.

Angle steel teeth, however, appear in the Boyer patent for a "rotary digging machine." But the Boyer teeth were not riveted alternately to opposite sides of the disc; they did not abut the hub; they all faced the same way, resulting in a narrower digging path than in Rude where the alternate angle teeth fastened on opposite sides of the disc, faced outwardly, and thus cut a wider path.

The Haldin patent for a harrow, relied upon by appellants as prior art, is a one-piece spider wheel, with pointed angle steel teeth alternately facing opposing sides of the disc. Haldin differs from the Rude, Boyer, and Van Nostrand spider wheels in that these latter three wheels have the separate teeth attached to the disc, while in Haldin, the teeth and the disc are made out of a single piece of metal.

From the foregoing, it appears that it was old in the art to use a spider wheel harrow with pointed teeth fastened to a disc; that it was old to fasten the teeth in such a manner that they abutted the hub; that it was old to dispose such teeth alternately on opposite sides of the disc; and that it was old in the art to use angle steel teeth. Rude, therefore, was not the first to employ angle steel in a spider wheel construction; nor the first to fasten pointed steel teeth alternately to the opposite sides of a disc with their inner ends abutting the hub. What Rude did was to substitute the angle steel teeth found in the Boyer patent for the flat steel teeth of Van Nostrand. However, this substitution was suggested by the Haldin patent which discloses the one-piece spider wheel with steel teeth, angle shaped, in cross section, and pointed and arranged alternately on opposite sides of the disc.

From the above, it seems clear that the claims of the patent in suit read on the Boyer angle steel teeth, assembled in the Van Nostrand spider wheel, which, it would appear, was obviously suggested by the Haldin patent, with its teeth of angle shape arranged alternately on opposite sides of the disc, as above remarked.

The above conclusion, however, is not decisive of this suit, but only brings us to the determining issues in the case: (1) whether the Van Nostrand, Boyer, and Haldin spider wheels were in an analogous art and, therefore, negatived invention in the patent in suit; (2) whether appellants can rely upon a combination of prior patents, including a foreign patent, as prior art, to negative the validity of appellee's patent; and (3) whether appellee's patent was invalid for want of invention.

We proceed, first, to discuss the issue with respect to analogous art.

It is claimed by appellee that the spider wheel disclosed in the Van Nostrand patent is in a nonanalogous art. Counsel emphasizes that the Van Nostrand wheel is merely

a rotary brush and clod cutter; that in the agricultural machine in which it is used, such spider wheel is held well above the ground and is utilized for the purpose of clearing out an accumulation of dirt and brush between the teeth of another part of the Van Nostrand mechanism of an entirely different character. It is this latter mechanism that engages and cuts into the ground, lifting the soil up in a strip of earth which is afterward subjected to the action of a row of cutting spider wheels that follow behind the soil-stripping mechanism. Counsel for appellee further emphasizes that the Van Nostrand wheel is, above all, not a hoe, as is the patent in suit; that it has a different function and a different purpose; and that it is, therefore, in a nonanalogous art.

As to the Haldin wheel, appellee submits that it is a "harrow," as is disclosed in the title of the patent. It is also argued by appellee, as in the case of the Van Nostrand wheel, that the Haldin wheel "is not a 'hoe' designed to lift the clods and turn them over to expose the weed roots to kill them while the crop is growing," but, as described in the patent, is an implement that pulverizes the soil and mixes the several layers of soil together, preparatory to planting the seeds.

With respect to the Boyer patent, appellee declares that it lacks all the essential features of the patent in suit, and that it was before the Patent Office and discarded by the Examiner. Further, appellee says that Boyer is relied upon by appellants to supply the missing links to the Haldin patent by showing detachable teeth on a disc, but that the difficulty with this idea is that these teeth were of a different shape, in that they are not curved, pointed, and self-sharpening; that they do not abut a hub to take end thrust; that they do not have the feature of being mounted in staggered relationship on opposite sides; and that they are used for a different purpose, that is, to make a fine, level seed bed prior to seeding.

 With regard to analogous art, it is the rule that, though an inventor is conclusively presumed to know the prior art in his own and clearly allied lines of endeavor, he is not bound by what has been done in remote or nonanalogous arts. Ottinger v. Ferro Stamping & Mfg. Co., 6 Cir., 59 F.2d 640; Alemite Mfg. Corp. v. Rogers Products Co., Inc., 3 Cir., 42 F.2d 648. A reference, in order to be effective to disprove the novelty of an alleged invention, must relate to the same art as the questioned invention, or to an analogous or closely related art. Wallace v. Mandel Bros., Inc., 7 Cir., 164 F.2d 861. "We are of opinion that whether arts or uses are analogous depends upon the similarity of their elements and purposes. If the elements and purposes in one art are related and similar to those in another art, and because and by reason of that relation and similarity make an appeal to the mind of a person having mechanical skill and knowledge of the purposes of the other art, then we are of opinion that such arts must be said to be analogous, and, if the converse is true, they are nonanalogous arts." A. J. Deer Co., Inc., v. U. S. Slicing Mach. Co., 7 Cir., 21 F.2d 812, 813; Copeman Laboratories Co. v. General Plastics Corp., 7 Cir., 149 F.2d 962; Wallace v. Mandel Bros., Inc., supra. In Dunham Co. v. Cobb, 6 Cir., 19 F.2d 328, 329, the patent in suit, which the court held invalid for want of invention, was for an agricultural implement, designated as a land roller pulverizer, comprising a front rank of roller discs furnishing an uninterrupted, corrugated surface from one end of the roller to the other, and a similar rear rank of smaller roller discs, with the corrugations arranged in staggered relation to the corrugations of the front rank. The oscillatory mounting of the rollers constituted the main feature of the invention. The prior art disclosed similar mountings for cutting implements and Judge Simons, speaking for the court, observed that the patentee was admittedly working in a very old art. "His roller pulverizer was designed to prepare the soil for cultivation in a single operation by one implement, which cut the clods and at the same time disintegrated them by the crushing effect of the continuous roller. It was undoubtedly old in the parent art of soil cultivation to mount circular cutting disks in rank upon a roller. It was old in the art to use

two such rollers, the larger one in front and the smaller one in the rear, with its cutting disks in staggered relation to the cutting disks of the front roller. It was old in the art to use a continuous cylinder for crushing purposes. It was old in the art to combine the cutting functions of circular disks with the crushing and pulverizing effect of a continuous roller by the use of a continuous corrugated cylinder." The plaintiff argued in the foregoing case that the mountings for the cutting implements in the prior art were in a different art than the one in which his patent was used and related only to cutting disc machines; and he further contended that the roller pulverizer was the result of development in a new or sub-art. The court, however, said: "Assuming this to be so, it seems to us that it must necessarily follow, from the history of the art, that the roller pulverizer is the lineal descendant of the old cutting disk machine with the rocking frame, as disclosed in the Gibson and Utting patents, wedded to the old crushing or pulverizing device, as exemplified in the continuous crushing roller, and that this offspring is entitled by right of descent to the previously disclosed useful characteristics of the two ancestral estates." The court held that even if it were to conceive of such differentiation between the new art, to which the appellant claimed that his structure belonged, and the parent art, it was clear that the mounting in the plaintiff's structure was such an application of an old device in an analogous way, and for the purpose of securing the same result, that neither novelty nor invention was contributed to the new art thereby.

In Detroit Stoker Co. v. Brownell Co., 6 Cir., 89 F.2d 422, 424, in discussing the patents there in issue for fuel stokers, Judge Simons, speaking for the court, observed that while the references to the prior art were in a "wholly nonanalogous art, and not perhaps a source of inspiration to inventors of stokers, yet illustrations of sliding connections operative only when fixed or adjustable stops are reached in relation to other elements, suggest themselves at once out of the store of daily experience and observation such as the extension table, the extensible fire ladder, the collapsible telescope, and other familiar devices." The court held that the patent in issue was only a common mechanical expedient and that the patentee had disclosed only expected mechanical skill in adapting for his purpose elements disclosed by the art.

In United States Gypsum Co. v. Consolidated Expanded Metal Companies, 6 Cir., 130 F.2d 888, 891, the patent in issue was for removal of burrs and rough edges from metal sheets by use of brushes with metal bristles. The court held that the fact that the machine was designed to operate on materials never before so treated did not, of itself, denote invention; and the fact that the brush bristles functioned differently from the way such brushes of the prior art functioned was equally lacking in persuasiveness of the exercise of invention. With respect to the argument that the prior art machines were concerned with brushing flat surfaces only, the court said: "The contention that the art of brushing perforated surfaces is new and not analogous to the brushing of imperforate surfaces, would seem to be but a play upon words even were we without the candid admission of the plaintiff's expert that the [patent in issue] lies in the old brush-scratching art."

Even though it should be held that patents relied upon by a defendant as prior art are in a nonanalogous art, nevertheless, their disclosures may not be ignored. There would still be no invention in the method claimed in one art if it were within the exercise of the skill of the worker in that art to make use of a method in a nonanalogous art. In re O'Connor, 161 F. 2d 221, 34 C.C.P.A., Patents, 1055.

In the light, then, of the foregoing authorities and the evidence in this case, are the Van Nostrand, Boyer, and Haldin wheels in an art analogous to that of the patent in suit? In determining this issue, we proceed to the consideration of how these wheels function, and what their purpose is.

The patent in issue is entitled, in the Patent Application, as a "Spider Wheel For Harrows." It states that it relates to an improved spider wheel for use "in con-

nection with harrows, cultivators, and other agricultural machines which have earth-treating means," and that it is particularly useful "in connection with a rotary hoe or mulcher for cultivating and mulching corn, wheat, cotton, oats, soy beans, mint, alfalfa, beets, and other crops, for instance to machines of the general type disclosed in my Patent No. 1,689,053." It is further stated in the application that the patent in suit "having to do solely with the spider wheel construction and not the manner in which the wheel is carried by the harrow or agricultural machine, and as my spider wheel is adapted for use on the harrow set forth in my Patent No. 1,689,053, as well as on other harrows or cultivators or agricultural machines, a showing and description of the improved wheel alone, will suffice." Patent No. 1,689,053, to which appellee refers in the patent in issue, is, on the Patent Application, entitled a "harrow," and specifies that the invention "relates to harrows, or ground treating devices, and more particularly to a structure comprising a rigid main frame and a series of pivoted or floating frames or units carrying the harrowing means." The specification set forth that the frames carry shafts upon which are mounted either tooth wheels, "or any other well known ground treating devices such as disks, shovels, pulverizer disks, grain drills or the like. * * * It will be understood, of course, that the term 'harrow' as used in the specification and claims signifies any instrumentality for treating the surface of the ground such as by plowing, pulverizing, drilling, etc. and that my invention is not confined to any particular type of instrumentality." The foregoing might well suggest that rotary-hoeing, cultivating, harrowing, pulverizing, and plowing were analogous, but that subject may be passed for the present.

The spider wheel of Van Nostrand is designated a "pulverizing device." The Boyer spider wheel is designated a "rotary digging machine." The Haldin wheel is designated a "harrow."

Appellee emphasizes, however, that the patent in suit is a rotary hoe; that the Haldin wheel is a "harrow," and not a "hoe" which is "designed to lift the clods

and turn them over to expose the weed roots to kill them while the crop is growing." Appellee's contentions as to the Haldin wheel are, however, contradicted by Haldin's specification which shows that the teeth or wings of his wheel, with "their sharply pointed extremities together with the sharpened edges converging at these extremities," permit "the weight of the harrow to force these wings deeply into the ground so as to pulverize or loosen up a thick upper layer of the soil," and, further, that after each tooth or wing has been driven into the soil by the weight of the harrow, its upper portion is forced forwardly by the motion of the harrow, thus partially loosening the soil, and immediately thereafter, it is lifted out of the soil; and that the action of the teeth upon the soil is, therefore, "somewhat similar to that of an ordinary shovel or spade as it is commonly used, the tendency being to lift portions of the soil rather than to force them to one side."

Appellee further submits that the Van Nostrand wheel is not a "hoe," but a "pulverizing and cleaning device," and that it does not "engage the ground and take the thrust and weight of the implement against the hard soil, its crust and its rocks." While the Van Nostrand wheel is described in the specification as a combined pulverizing and cleaning device, which is located above the ground in order to operate at a high rate of speed, it performs two functions: (1) it cleans between the teeth of the rotary plow which is located in front of it; and (2) it cuts into the strips of elevated soil which have been lifted above the surface by the plow, and pulverizes them, causing them to fall in a finely divided condition, "so that a planter may be used in connection with the machine for sowing the seed," as the plow travels over the land.

With regard to the Boyer wheel, appellee says that it does not show curved teeth, and particularly fails to show any abutment of the teeth on a hub, and shows the teeth only on one side, located on the periphery of the disc with no provision to take end thrust on the digging teeth. It is true Boyer does not show curved teeth,

but the Patent Office Examiner cited against Rude's original claims, the Boyer patent, inasmuch as it showed angle steel teeth; and the Examiner stated that "No invention is involved broadly in providing Boyer with curved rather than straight teeth, in view of the common use of curved teeth in the art." Furthermore, the drawings in the Boyer patent clearly disclose pointed teeth. However, at this point of the case, we are principally concerned with the purpose and function of the spider wheels as bearing upon the question whether the prior patents are in an art analogous to the patent in suit; and in this respect, with regard to the Boyer wheel, appellee says that it is used for an entirely different purpose than the patent in suit—that is, to make a fine, level seed bed prior to seeding. As to this, the Boyer patent stated that his wheel "makes possible to break up the soil before placing the seed and to work the soil without having to rake it. It will mix the seeds of all kinds with the soil and thereby produce a maximum of efficiency. The angular position of the branches of the discs has the result that the break-up of the soil begins even before the machine begins to advance, thereby withdrawing the clods from the soil, and to remove them completely." It may here be remarked that appellee, in his brief, emphasizes that the Rude wheel is a spider wheel rotary hoe for ground cultivation; that it is not driven; but that the wheels are pulled over the ground, penetrating it as they roll freely. However, Rude does not distinguish in his patent between a spider wheel which is power driven, and one which is rotated merely by being driven through the soil. In this regard, his patent states that because the invention has "to do solely with the spider wheel construction *and not the manner in which the wheel is carried by the harrow or agricultural machine,* * * * a showing and description of the improved wheel alone, will suffice."

Are all of these prior art spider wheels in an art analogous to that of the Rude wheel here in suit? Are rotary-hoeing, digging, plowing, cultivating, harrowing, pulverizing, and mulching such similar operations for such similar purposes as to be analogous arts? Is hoeing, done by a rotary hoe, such as the patent in suit, analogous to harrowing or cultivating or plowing or pulverizing? In Webster's New International Dictionary, Second Edition, a hoe is defined as an implement, consisting, in its commonest form, of a thin flat blade set transversely on a long handle, used for weeding, loosening the earth around plants, etc.; a one-horse tillage implement for cultivating between the rows of vines, bushes, and the like. To hoe is defined as to dig, scrape, clean, or the like, with a hoe; also, to clear weeds, or to loosen or arrange the earth about, with a hoe. A rotary hoe is defined as an implement consisting of a number of rotating hoe wheels, each having long, flat, slightly curved, sharp-pointed steel fingers at its circumference. A harrow is a cultivating implement used primarily for pulverizing and smoothing the soil and sometimes for mulching, covering seed, and removing weeds; and an acme harrow is a harrow having attached to a transverse horizontal frame, curved stiff blades projecting rearward which crush the clods in front and stir the surface soil in the rear. It is also called a pulverizer, pulverizer harrow, curved knife-tooth harrow, and a blade harrow. A cultivator is an implement used to break up the surface of the ground while the crops are growing, in order to keep the soil in a porous condition, conserve moisture, and kill weeds. To plow is defined as to turn up, break up, or trench, with a plow; to till with, or as with a plow; to make a furrow, with a plow; to break, throw, root or cut (up) with, or as with a plow. Of the foregoing, cultivation and plowing seem farthest removed from each other as analogous art, for plowing is done before the seed is planted, and cultivation is used to break the ground and keep it porous while the crop is growing; and appellee emphasizes the difference between harrowing to prepare a seed bed, and mulching in a growing crop. Yet, in Linville v. Milberger, 10 Cir., 34 F.2d 386, 388, the court held, and, in our view, rightly so: "Cultivation and plowing are analogous; where a disc is employed, they differ in degree only."

Appellee contends that a clear distinction exists in the agricultural industry between

harrows which prepare the seed bed and leave it in a fine, granular condition as a level surface for seeding, and a hoe or "mulcher" which turns over the soil in clods, "putting the weeds on the under side so they can form a mulch to keep moisture in the soil between the rows of the growing crops while the weed roots are exposed to the sun and dew;" and he further declares that prior patents on making seed beds before planting are wholly different from a "hoe" doing mulching work in a growing crop. However, this seems contrary to the evidence, as well as to the ordinary meanings of such processes found in the dictionary definitions. Appellee's principal expert witness testified that "mulching" was the placing of any material on the surface of the soil, such as straw, *or loose soil itself,* "that might stop the action of capillary attraction of water going off into the air. It acts as a retarding device for capillary action." In this regard, it is pertinent to note that a "dust mulch" is defined as a *fine,* loose, dry layer of surface soil maintained by cultivation to prevent evaporation of moisture. Webster's International Dictionary, Second Edition. Appellee's patent specification does not describe any unique, particular type of mulching performed by his spider wheel, but, in this respect, only states that it is useful "for cultivating and mulching" crops. Thus, there appears little distinction between a harrow, which prepares a seed bed and leaves it in a "fine, granular condition as a level surface," and a mulching hoe, which prepares a dust mulch, and leaves a "fine, loose, dry layer" of soil as a surface. Moreover, it may again be said that according to the dictionary, a harrow is defined as a cultivating implement, one of the uses of which is for mulching and removing weeds.

From their mere definitions and the purposes of each as therein set forth, hoeing, harrowing, and cultivating are analogous; harrowing and pulverizing are analogous; and hoeing, harrowing, and pulverizing lie in an analogous art. It is obvious from the patent disclosures and the evidence concerning their operation that the Van Nostrand, Boyer, and Haldin spider wheels, as well as the Rude patent in suit, have their function and purpose in an analogous art.

Having come to the conclusion that the Van Nostrand, Boyer, and Haldin spider wheels are in an art analogous with the patent in issue, we are confronted by appellee's contention that, in their references to the prior art, appellants are here relying upon a combination of the Van Nostrand, Boyer, and Haldin patents; that these three patents may not be combined as prior art to invalidate the patent in suit; and that appellants, to sustain their contention, "must supplement the French (Boyer) patent and reconstruct it although it is against the law to supplement a foreign patent with extraneous assistance," citing American Tri-Ergon Corp. v. Paramount Publix Corp., 2 Cir., 71 F.2d 153. In that case, it was held that in order to constitute invalidity of the patent there in suit by a foreign patent, it must have been shown that the inventions actually claimed in that foreign country and those of the patent there in suit, were identical, and that it was not enough to say that the foreign patent might disclose the invention of the later United States patent when it was not therein claimed. This somewhat ambiguous language is from a case that was thereafter reversed by the Supreme Court. Paramount Publix Corp. v. American Tri-Ergon Corp., 294 U.S. 464, 55 S.Ct. 449, 79 L.Ed. 997. The rule, however, is that where a foreign patent has been granted, it may negative novelty in a domestic patent thereafter issued; and a foreign patent may also be considered in determining whether a later patent in this country partakes of the quality of invention. For it has been held that, as to foreign patents, they are of just as much force and effect as domestic patents in constituting an anticipation of a patent. Girard Trust Co. v. Schwartz-Gilbert Co., D.C.N.Y., 36 F.Supp. 218. A foreign patent is competent to anticipate a domestic patent if it teaches the invention with sufficient clarity to enable those skilled in the art to understand its nature and to carry it into practical use without further experimentation. Hollywood-Maxwell Co. v. Street's of Tulsa, 10 Cir., 183 F.2d 261. It is true that to be an anticipation, the dis-

closure of a prior patent, even a domestic patent, must be clear, and we may assume for present purposes that the rule must be more strictly applied to foreign than to domestic patents. Nevertheless, if the descriptions and drawings of a foreign patent disclose the invention in terms so full and clear as to enable a person skilled in the art to practice the invention without making experiments, then it will be a complete anticipation. Hoddersen-Balling v. Lorenz and Kussat, 2 Cir., 60 F.2d 709. "An inventor is charged with knowledge of whatever the prior art discloses, but the disclosure, to be an anticipation, must be clear and certain. Why it need be more clear in a foreign patent than domestic one, we confess is not obvious to us. But we need not now determine whether the distinction is too firmly established to be disregarded. We mention it merely by way of a caveat." Trussell Mfg. Co. v. Wilson-Jones Co., 2 Cir., 50 F.2d 1027, 1029.

Here it is pertinent to refer to what Judge Simons observed in United States Gypsum Co. v. Consolidated Expanded Metal Companies, 6 Cir., 130 F.2d 888, 889: "Though it be elementary to do so at this late date in the development of the patent law, it is necessary to recall that three elements are requisite to validity, to-wit: novelty, utility, and invention." Some things are not patentable because, though new things, they are not invented things. Such things lack patentability not because they lack newness, but because they lack invention. Boston Pencil Pointer Co. v. Automatic Pencil Sharpener Co., 2 Cir., 276 F. 910; Aro Equipment Corp. v. Herring-Wissler Co., 8 Cir., 84 F.2d 619. Anticipation belongs in the field of novelty. To anticipate an invention is to negative novelty; but even though a patent is not anticipated, and is concededly novel, it may lack invention. In order to anticipate an invention, it is necessary that all of the elements of the invention or their equivalents be found in one single description or structure, where they do substantially the same work in substantially the same way. Dow Chemical Co. v. Williams Bros. Well Treating Corp., 10 Cir., 81 F.2d 495, 501. See Walker on Patents, Volume I, Section 47,

Deller's Edition, 1937. However, if a new assemblage of old things amounts only to aggregation and not to combination, or if it results in no new mode of operation, the patent which covers it will be void for want of invention, though not void for want of novelty. In Ohmer Fare Register Co. v. Ohmer, 6 Cir., 238 F. 182, 186, Judge Knappen, speaking for the court, said: "We are cited to no reference in the prior art fully anticipating the patent in suit. But we are considering the scope of invention, not anticipation; and in such inquiry the question is one of fact, taking into account the entire prior art, whether the advance made in the given case amounts to invention or only mechanical skill. * * * All elements of the prior art have a bearing upon the question of invention; it being unnecessary to a finding of lack of invention that every element be found in one embodiment." See also Loeber Hair Goods Co. v. H. W. Gossard Co., 6 Cir., 87 F.2d 98. "Plaintiff does not dispute but that all the elements of this patent are found in the prior art. Authorities are cited in support of the argument that anticipation can not be shown by reference to one prior art patent or publication for one part of the improvement, and another prior art patent or publication for another part of the improvement, etc. No doubt this is an established principle of patent law. Even so, we know of no reason why the prior art may not be properly considered on the question of invention. We need not decide whether the patent in suit is anticipated by any one of such prior art patents. It is sufficient, we think, that the prior art disclosures are such that a person skilled in the art might readily design the improvement which [the patentee] claims to have made. The improvement thus made would not, in our judgment, amount to invention, and the claims in suit are therefore invalid." Dixie-Vortex Co. v. Paper Container Mfg. Co., 7 Cir., 130 F. 2d 569, 572. In Busell Trimmer Co. v. Stevens, 137 U.S. 423, 11 S.Ct. 150, 34 L. Ed. 719, the court had before it for adjudication the validity of a patent covering a rotary cutter for trimming the edges of shoe soles. The claim was made that the features of the patent there in suit were

patentable *novelties*—especially because of the combination of them into one device. The court rejected this contention in view of the previous state of the art. In its holding, the court said that the evidence, taken as a whole, shows that all of the claimed elements were to be found in various prior patents, some in one patent and some in another, but all performing like functions in well known inventions having the same object as the patent in suit. From the above, it would appear that the court was of the opinion that the patent in suit could be considered anticipated by the prior art, and that the novelty of the combination in one device of the features of the patent could be negatived by a reference to one prior art for one feature and to another prior art for another feature.

The foregoing would seem to be in contradiction of the law relied upon by appellee to the effect that appellants cannot combine the different parts of three prior patents—particularly where one is a foreign patent—for the purpose of making a new composite structure to anticipate the later patent, or, as stated in Craft-Stone, Inc., v. Zenitherm Co., Inc., 3 Cir., 22 F.2d 401, 402, it is not permissible for an infringer to go to the prior art and defeat the patent by selecting the various elements of the patentee's process from different patents, bring them together, and say that such an aggregation anticipates.

However, the explanation of this seeming contradiction between Busell Trimmer Co. v. Stevens, supra, and the law relied upon by appellee may be found in the fact that in a number of the cases, the word "anticipation" is used, not as negativing novelty, but as equivalent to invention; and it has been held that where each of the various elements of a claimed invention has been found in the prior art as in prior patents, or in devices previously in general use, such prior disclosures or uses may be combined to establish "anticipation" of *invention*. See Gilbert v. Marzall, 87 U.S. App.D.C. 1, 182 F.2d 389; Chicago Steel Foundry Co. v. Burnside Steel Foundry Co., 7 Cir., 132 F.2d 812; Lyman Gun Sight Corp. v. Redfield Gun Sight Corp., 10 Cir., 87 F.2d 26; In re Armbruster, 47

F.2d 815, 18 C.C.P.A., Patents, 1039; In re Downs, 45 F.2d 251, 18 C.C.P.A., Patents, 803. See also Ranco, Inc., v. Gwynn, 6 Cir., 128 F.2d 437.

As to foreign patents' negativing invention, they are pertinent as prior art by reason of what is clearly and definitely expressed in them. In re Christopher, 156 F.2d 177, 33 C.C.P.A., Patents, 1175. "We see no reason why the foreign patents should not be considered, since they clearly disclose the features relied upon * *." In re Smith, 76 F.2d 142, 145, 22 C.C.P.A., Patents, 1201.

We are not concerned, however, in this case, with the question whether the patent in issue lacked novelty in being anticipated by prior art patents, but solely with the question whether the patent in issue was void for want of invention, and in determining this issue, the prior art may be considered on the question of invention. As has been suggested, the claims of the patent in suit read on the Boyer angle steel teeth, assembled in the Van Nostrand spider wheel, which was suggested by the Haldin patent. Having been taught by the prior art that the teeth of a spider wheel may be of sharp, pointed, angle steel, as disclosed by Boyer; that teeth may be fastened to the circular metal plate or disc by rivets, and thereby be detachable, as disclosed by Boyer and Van Nostrand; that they may be arranged on opposite sides of the disc, as disclosed by Van Nostrand; and that the angle pointed teeth could alternately face opposing sides of the disc, as disclosed by Haldin—does the combination of these elements in a spider wheel to function in the same or analogous art rise to the dignity of invention? As to the claim that there was a patentable difference between Haldin and the Rude patent in suit because of the fact that, in Rude, the teeth were detachable from the disc whereas, in Haldin, the teeth, disc, and hub were incorporated into one piece, the Supreme Court, in Busell Trimmer Co. v. Stevens, 137 U.S. 423, 11 S.Ct. 150, 34 L.Ed. 719, found that there was no patentable difference between a rotary cutter for leather, in which the teeth were solidly incorporated in one piece with the hub, and a cutter, in

which the teeth were detachable. As to the Van Nostrand wheels operating to break up the elevated strip of earth and to cut into and pulverize the elevated soil raised above the surface by the plow preceding the spider wheel, in contrast to Rude's wheel which operated on the ground itself, the Busell case suggests that there is no patentable difference in these functions, since there is no patentable difference between a cutting wheel used in the metal art, and one used in the same way in the leather art. See also United States Gypsum Co. v. Consolidated Expanded Metal Companies, 6 Cir., 130 F.2d 888.

■ Appellee combined known elements in his spider wheel with no change in their respective functions. His wheel was a better wheel than Haldin's because when one of the wings or teeth on Haldin's wheel was broken or bent, the wheel had to be thrown away, whereas Rude's wheel could be repaired by detaching such teeth and riveting others on to the disc. Rude's wheel was also better than Van Nostrand's because, with detachable teeth but without angle steel teeth, Van Nostrand did not dig into the soil and lift or throw it upwards, which was doubtlessly of much more utility in exposing the roots of the weeds to the air and killing them in this manner; and it was better than Boyer's wheel, with detachable angle steel teeth, because the Boyer teeth did not abut against the hub to take the severe end thrust to which such a wheel was subject and was not mounted in staggered relationship on opposite sides of the disc which adds to the width of the digging track, as well as adding to the strength and utility of the structure. But combining the best features of these three wheels, in an analogous art, was not invention, for no new, additional, or different function, within the meaning of the law, resulted from their being brought into concert.

In Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162, it is emphasized that the patent there in suit was wanting in any unusual or surprising consequences resulting from the unification of the elements there concerned, and that there was nothing to indicate that the lower courts scrutinized the claims in the light of this severe test. In the instant case, the only findings that the district court made as to the performance, by the Rude wheel in suit, of a new or different function or operation than that theretofore performed by wheels, having the elements which were combined in Rude, was that the features of the Rude combination "result in improvements in greater coverage and more soil-lifting ability and therefore more cultivation;" that Rude's invention, as shown by the combination of all the elements therein and the new and improved use of which it was capable and used, was not disclosed by the prior art; that the evidence did not disclose, in any single patent or any combination or prior art patents relied upon, the structure of the Rude patent; and that the combination of Van Nostrand, Haldin, and Boyer did not show, singly or in combination, Rude's patent, which shows a new and improved use, as well as new and improved elements not disclosed by the patents relied upon by appellants. There is no question that an improvement resulted from the combination of the Rude features. But this improvement was not an unusual or surprising consequence of the unification of the elements there concerned. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., supra; Lincoln Engineering Co. of Illinois v. Stewart-Warner Corp., 303 U.S. 545, 58 S.Ct. 662, 82 L.Ed. 1008; McCord Corp. v. Beacon Auto Radiator Co., Inc., 1 Cir., 193 F.2d 985; Packwood v. Briggs & Stratton Corp., 3 Cir., 195 F.2d 971. As to the finding that the combination of Van Nostrand, Boyer, and Haldin did not disclose, singly or in combination, the invention of the patent in suit, this appears, from an examination of the patents themselves and from the evidence, clearly erroneous.

■ As to invention, it is the rule that the patentability of claims depends upon whether or not an applicant, with the cited references before him, could make the structure claimed in his application without the exercise of the inventive faculty. If he could, then no invention is present; and the rule is applicable whether or not the applicant had ever seen any of

the cited references. Application of Thayer, 143 F.2d 996, 31 C.C.P.A., Patents, 1224. Where an inventor rearranges or readjusts old elements, or uses their equivalents, to make a new structure in which each part operates substantially as in the old, and with the same results, while this may have required the exercise of a high degree of mechanical skill, the result is not invention. Westinghouse Air Brake Co. v. Schwarze Electric Co., 6 Cir., 108 F.2d 352. In an art crowded with prior teachings, as here, it is our opinion that while a high degree of mechanical skill may have been involved, the patent in suit was invalid for want of invention. Our determination makes it unnecessary to discuss or pass upon the other interesting issues submitted in the briefs and the arguments of counsel.

In accordance with the foregoing, the judgment of the district court is reversed and the case is remanded with instructions to dismiss the complaint.